MANUEL LEÓN PARRA, Petitioner and Appellant, *v.* PATRICK J. FITZSIMMONS, AUDITOR OF PUERTO RICO, ET AL., Respondents and Appellees.

No. 8435. Argued November 13, 1942.—Decided February 3, 1943.

Rehearing Denied February 25, 1943

*Celestino Iriarte, F. Fernández Cuyar,* and *H. González Blanes* for appellant. *M. Rodríguez Ramos, Acting Attorney General,* and *R. García Cintrón, Assistant Attorney General,* for appellees.

Mr. Chief Justice Del Toro delivered the opinion of the court.

This is a mandamus proceeding instituted, in the District Court of San Juan, by a member of the Industrial Commission of Puerto Rico, praying that the Auditor and the Treasurer of the Island be respectively directed to authorize the payment and to pay to him a certain sum which had been deducted from his salary during the fiscal years 1932–33, 1933–34, 1934–35. It involves the construction of the Organic Act.

Manuel León Parra, the petitioning commissioner, held his office from April 29, 1929, to June 30, 1935, by virtue of appointments made by the Governor in accordance with Act No. 40 of 1929 creating that commission, which act fixes the term of office of commissioner at three years, and his salary at three thousand five hundred dollars.

He received the amount of his salary fixed by said act until June 30, 1932, and from that date on, although the Legislature had appropriated in the budgets approved by it, for the fiscal years 1932–33 and 1933–34, the corresponding amounts in harmony with that act, there were deducted from his salaries certain sums by virtue of the action of the Governor, to which reference is made in the following statements, sent by that official to the Office of the Executive Secretary when forwarding the budgets to the latter:

"Government House, Puerto Rico.—San Juan, Puerto Rico, May 13, 1932.—By virtue of the authority vested in me by Section 34 of

the Organic Act of Puerto Rico, the following items and parts or portions thereof of House Bill No. 232, making the appropriations necessary for the operation of the Industrial Commission during the fiscal year 1932–33, are hereby objected to by the undersigned:

"Page 1.

"...

"Line 17—eliminate '3,500' and insert '3,150'.

"...

"(Seal) (Sgd.) José Padín, Acting Governor of Puerto Rico."

"Government House, Puerto Rico.—San Juan, Puerto Rico, May 8, 1933.—By virtue of the authority vested in me by Section 34 of the Organic Act of Puerto Rico, the following items and parts or portions thereof of House Bill No. 302, entitled . . . . are hereby objected to by the undersigned:

"Page 1.

"...

"Line 10—eliminate '3,500', and '7,000' and insert '2,992.50' and '5,985.00' respectively.

"(Seal) (Sgd.) James R. Beverley."

During the fiscal year 1934–35, the petitioner did not receive the salary of $3,500 either, but that of $2,992.50 appropriated by the Legislature in the budget act which containing that appropriation was approved by the Governor.

Was that reduction legal? The district court held that it was, and it is from its judgment dismissing the complaint that the present appeal has been taken.

■ The appellant maintains, in the first place, that although the Governor, in accordance with §34 of the Organic Act of Puerto Rico, has the power to object to one or more items of any bill submitted to him, he has no power to reduce them.

That question was decided by this court adversely to the contention of the appellant, in the case of *De la Rosa* v. *Winship*, 47 P.R.R. 312. The opinion of the court was delivered by Mr. Justice Hutchison. It began thus:

"Petitioner, in his first cause of action, challenges the power of the Governor to scale an item in an appropriation bill under the authority conferred upon him by Section 34 of the Organic Act."

It transcribed the pertinent part of the cited section, in English and in Spanish, and said:

"Petitioner does not question the meaning of the Spanish version, but says that it is a bad translation. The contention is that 'thereof' refers to the 'bill' mentioned in the first part of the sentence, but not to the items' subsequently twice mentioned in the same sentence and in the context immediately preceding the word 'thereof.' Hence, petitioner insists that in the Spanish version *'porciones de las mismas'* should be amended to read *'porciones del mismo' (el proyecto).* No rule of grammatical construction is cited in support of this view. When the meaning of words used in a statute is perfectly plain, effect should be given to that meaning even under the rule of strict construction which, where a grant of power is involved, is applicable only in case of doubt as to what the legislature intended. When Congress said that the Governor 'may object to one or more of such items, or any part or parts, portion or portions thereof,' it meant, we think, that 'he may object to one or more of such items, or any part or parts, portion or portions' of such items."

It then referred to the decisions cited by the petitioner in the following terms:

"We need not discuss the cases relied on by petitioner. A comparison of the paragraph above quoted from our Organic Act with the various constitutional provisions involved in those cases will suffice to distinguish them. In none of those cases was the court dealing with a constitutional provision which in plain terms authorized disapproval of any part or portion of an item as well as disapproval of the item. For the purpose of this opinion it may be freely conceded that a grant of authority to disapprove of any item or items, without more, cannot be enlarged by construction into a grant of power to disapprove any part or portion of such item or items. That is the gist of what has been decided by most, if not all, of the cases relied on by petitioner. From some of the more effusive opinions it may be inferred that certain courts might have questioned the wisdom of such a provision as Congress saw fit to embody in our Organic Act. We find nothing in any of the cases cited by petitioner that militates against the conclusion reached by us as to the meaning of that provision."

It mentioned the note to the case of *Ex rel Commonwealth, Elkin* v. *Barnett,* 55 L.R.A. 882, 883, which contains

a list of the various constitutional provisions on the subject in several states of the Union, in construing some of which the courts have held that the governor had no power to "reduce," and concluded:

"The wording of our Organic Act is much more explicit. Congress was aware of the stereotyped phraseology of the state constitutions and of the interpretation placed thereon by the state courts. Instead of following any of these precedents it elected to establish an unmistakable innovation and in its choice of words left but little to the imagination."

It went on to study the theory of the grant of power involved, and in considering the allegation made that the reduction in the concrete case dealt with, was due to a preconceived plan of the Commissioner of Health to eliminate from his department all officers who were members of the political party to which the petitioner belonged, it referred to the authorities cited, and ended by saying:

"Petitioner is director and resident physician of a hospital for contagious diseases, and visiting physician of the Leper Colony. There might be some difficulty in finding a physician of his experience and professional standing who would accept an appointment to the position in question at a salary of $2,400. We cannot assume with petitioner, however, that a competent man could not be found."

As may be seen, the matter was given most careful consideration. The new citations made in this case in support of a contrary view fail to convince us that the decision of this court was erroneous. Moreover, said citations pertain to decisions based on constitutional provisions which are different from ours, and the fact that in the State of California the Constitution had to be amended so as to grant the power is immaterial, inasmuch as the Constitution which was thus amended was not drafted in the same terms as the Organic Act of Puerto Rico.

■ It is insisted that the *administrative act* executed by the Governor constitutes an amendment to the statute and

that the Governor lacks such power. We do not agree, because when the Governor acts in the exercise of the power conferred upon him by §34 of the Organic Act, as he acted in this case, he does so as a part of the legislative department of the government. Woodrow Wilson in his work "Congressional Government" (Houghton, Mifflin and Company, 9th ed., 1892), at page 152 said: "In the exercise of the power of veto . . . the President acts not as the Executive but as a third branch of the Legislature." And the same thing has been held with respect to the Governor. See *Arnett* v. *Meredith*, 275 Ky. 223, 121 S. W. (2d) 36, 37, 119 A.L.R. 1183, 1185.

Now, that conclusion leads us to a consideration of this concrete case as a whole, because if the Governor, when exercising the power conferred upon him by §34 of the Organic Act, acts as a part of the Legislature, it is clear that he can not go beyond the power of the Legislature itself. And the petitioner, referring to the reduction of salary, has invoked the constitutional limitation imposed on the Legislature by the 13th paragraph of said §34 of the Organic Act, which says:

"Except as otherwise provided in this Act, no law shall extend the term of any public officer or increase or diminish his salary or emoluments after his election or appointment, nor permit any officer or employee to draw compensation for more than one office or position."

Construing the above legal provision, this court in the case of *Arjona* v. *Winship*, 49 P.R.R. 50, held that:

"In order to render applicable the constitutional limitation regarding increase or reduction of salaries, which is set forth in the thirteenth paragraph of section 34 of the Organic Act of 1917, the officer in question must have been appointed for a term and at a salary fixed by law. If the compensation is only appropriated in the General Appropriation Act, the Legislature retains the power to change the appropriation from time to time as authorized by section 50 of said Organic Act."

What was lacking in the *Arjona* case, *supra,* exists herein. In the *Arjona* case as in the *De la Rosa* case, *supra,* the salaries of the officers were fixed by the General Appropriation Act, which is a statute of a transitory nature, whereas in the present case the salary and the term of the officer were fixed by the act creating the body to which he belonged, Act No. 40 of 1929 (Laws of 1929, p. 222), which is a statute of permanent nature, thus:

"Section 1.—Section 7 of the Workmen's Accident Compensation Act, approved May 14, 1928, is hereby amended to read as follows:

"  *    *    *    *  (  *    *    *

"  'Section 7.—The Workmen's Compensation Service shall be in charge of the following organisms:

"  '  *    *    *    *    *    *    *

"  '  (b) A commission is hereby created in the Department of Agriculture and Labor of Porto Rico, which shall be known as the Industrial Commission of Porto Rico, which commission shall be composed of three commissioners appointed by the Governor of Porto Rico on recommendation of the Commissioner of Agriculture and Labor, with the advice and consent of the Insular Senate. One of said commissioners shall be designated as chairman by the Governor of Porto Rico. The term of office of the commissioners shall be three years, and until their successors have been legally appointed and have qualified;

"  'The chairman shall receive a salary of four thousand five hundred (4,500) dollars a year, and the two commissioners a salary of three thousand five hundred (3,500) dollars a year, each. . . .''

Therefore, all the requisites provided by law and the decisions for the application of said constitutional limitation are present in this case. And if the legislative power itself, through its genuine and sole representative, the Legislature, could not make the reduction under the circumstances of this case, with less reason could the Governor make it, while acting by way of exception as a branch of that power. Every law should be interpreted as a whole, and we have interpreted the Organic Act as a whole in order to reach the

conclusion we have announced. Of course, we are not considering here a legislative measure of a general character, adopted for the purpose of meeting an emergency.

That being so, the judgment appealed from must be reversed and another rendered instead sustaining the petition.

Mr. Justice Snyder did not participate herein.

ON MOTION FOR REHEARING

February 25, 1943.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This court has been asked to reconsider its decision of February 3d instant, whereby the judgment appealed from was reversed and the petition for mandamus sustained. Both parties were heard on the motion for rehearing.

The reconsideration is sought on the ground that the judgment of this court is in conflict with its previous decisions in the cases of *Ponsa v. Winship, Governor,* 53 P.R.R. 871, and *Soto v. Auditor of P. R.,* 56 P.R.R. 775, wherein it was respectively held that "In so far as increasing or diminishing salary or emoluments is concerned, the spirit and purpose of paragraph 13 of section 34 of the Organic Act are to forbid legislative action after, but not before, an appointment or reappointment, as the case may be . . . (and) the action of the Insular Legislature in reducing plaintiff's salary prior to the date of his reappointment for a second term in office . . . (does) not violate paragraph 13, section 34, above mentioned," and that "Any person who accepts the appointment to an office with a salary fixed in the general appropriation bill is not entitled to the larger salary originally attached to said office by the law creating the same."

The original decision in the case of *Ponsa v. Winship, Governor, supra,* which is the one invoked, proceeded on the fact of the reappointment of the plaintiff officer after his salary had been reduced by the Legislature in the Gen-

eral Appropriation Act, and the same thing happened in the case of *Soto* v. *Auditor of P. R., supra,* whereas in the case of León Parra herein, when the reappointment was made on June 15, 1933, the Legislature had already appropriated in the budget act an amount equal to that fixed by the act creating the office, and the reduction made by the Governor was not decisive because he had acted under the circumstances of the case, without authority therefor.

In our judgment, it is clear that the Governor, when exercising the power conferred upon him by §34 of the Organic Act, could not reduce a salary already fixed by the act creating the corresponding office, the term of which has likewise been fixed, and if this be so, he could not do it either, where said salary has also been included in the budget act, since it is untenable that there may be accomplished through indirect means what can not be done directly.

And such is the case here. The law creating the office of the petitioner, León Parra, fixed the term and salary thereof, and the Legislature carried into the budget the salary as fixed by that law, and it was the Governor who made the reduction. To interpret §34 in the sense that it covers that special situation, would be going too far, since there is involved an exceptional power which should be strictly construed. As was said in the case of *Arnett* v. *Meredith,* 275 Ky. 223, 121 S. W. (2d) 36, 119 A.L.R. 1183, 1185, cited in the opinion which served as a basis for the judgment sought to be reconsidered:

"All American courts before which the question has been submitted for determination—as well as all text writers on the subject—unanimously hold that the exercise by the Governor of the veto power conferred upon him by the local Constitution is a legislative act and involves an encroachment by the executive department upon the functions of the legislative department, and which is one of the exempted 'instances hereinafter expressly directed or permitted,' as is contained in section 28, supra, of our Constitution.

"An example of the universal statement of text writers substantiating the above statement is found in 59 C. J. 575, section 101, saying: 'Under the system of government adopted in this country the chief executive, either the president or a governor, is a part of the lawmaking power; and while engaged in considering bills which have been passed by the legislature and which are presented to him for approval or disapproval, the governor is acting in a legislative capacity, or is exercising a power which is essentially legislative in character, and is not acting in an executive capacity' . . . However, it truthfully may be said that there is no dissent with the courts or text writers on the correctness of the proposition, i. e., that the exercise of the right of veto, wherever it is conferred by the local Constitution, involves the performance of legislative functions instead of executive functions. Perhaps no principle embodied in our Constitution (and also in those of other states) is more emphatically cherished and guarded than that of the division of the government provided by the Constitution into the three separate branches, supra; and, therefore, courts unanimously announce the rule to be that all provisions for such permitted encroachments by one department in the exercise of functions properly belonging to another, that may be found in the Constitution, are not only mandatory, *but should be strictly construed.*" (Italics ours.)

Since different situations are involved, the alleged conflict does not exist, and therefore the reconsideration sought does not lie.

Mr. Justice De Jesús did not participate herein.